# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **EMPLOYERS MUTUAL CASUALTY COMPANY,** | **8:25CV442** |
| **Plaintiff,** | |
| **vs.** | **ORDER** |
| **ELLIOTT EQUIPMENT COMPANY,** | |
| **Defendant.** | |

This matter comes before the Court on the Motion to Deny or Defer Ruling on Plaintiff's Motion for Summary Judgment Pending Discovery (Filing No. 36) filed by Defendant, Elliott Equipment Company ("Elliott"). Elliott moves the Court to deny without prejudice Plaintiff Employers Mutual Casualty Company's ("EMC") Motion for Partial Summary Judgment (Filing No. 22), or in the alternative defer considering EMC's until Elliott has been provided an adequate opportunity to conduct discovery. (Filing No. 36 at p. 1). The undersigned magistrate judge held oral arguments on Elliott's motion by telephone on April 9, 2026. (Filing Nos. 42-43). A transcript of the hearing was prepared and filed, and the matter is fully submitted to the Court. (Filing No. 47).

## BACKGROUND

EMC commenced this declaratory judgment against its insured, Elliott, to determine Elliott's lost business income covered under the Commercial Output Insurance Policy, Policy No. 5B0-61-55---22 (the "Policy") it incurred from a June 7, 2022, hail storm. At the time of the storm, Elliott manufactured chassis-mounted equipment for construction, mining, and other industries. (Filing No. 1). EMC take the position that the amounts of any "Orders" or "Bookings" are not relevant or appropriate for inclusion or consideration as a part of the computation Elliott's business income loss claim under the Policy. (Filing No. 1 at p. 9). In Elliott's counterclaim, it projects it would have booked $74,962,232 in orders from July 2022 to June 2023, but due to the storm, it only booked $41,598,549 in orders, reducing its revenue by $33,363,683 in lost bookings. (Filing No. 6 at p. 10).

EMC has now moved the Court to review the plain language of the Policy and determine as a matter of law that "Elliott's alleged 'lost bookings' that would not have been completed during the 'restoration period' are not included or used in the computation of Elliott's business income loss under the Policy." (Filing No. 22 at p. 2). Citing to various provisions of the Policy, EMC contends, "The plain language of EMC's Policy only provides coverage for lost income during the restoration period," and thus "any lost income that would have been earned after the restoration period, such as the "lost bookings," is not covered under the Policy." (Filing No. 34 at pp. 3-4).

In support of its Motion for Partial Summary Judgment, EMC filed an Index of Evidence containing the pre-litigation examination under oath of Jamie Hudson, Elliott's Chief Financial Officer, dated April 28-29, 2025. (Filing No. 23; Filing No. 34 at p. 12). In EMC's brief, it cites to portions of Hudson's testimony concerning Elliott's process for taking, recording, accounting, invoicing, and otherwise and treating "Bookings" or "orders" for proposed equipment. (Filing No. 34 at pp. 4-6). EMC also cites to Hudson's testimony regarding the "extended backlog" of "bookings" or "orders" that began growing in 2021 through and beyond the hailstorm. (Filing No. 34 at pp. 6-7). EMC also cites to Hudson's testimony that forms the basis of Elliott's counterclaim for lost bookings of over $33 million and cancelled orders of over $4.7 million resulted in a loss of business income of $10,926,471. (Filing No. 34 at p. 10). EMC contends, "This Court can and should rely on Elliott's statements contained in the examination under oath when deciding EMC's Motion for Partial Summary Judgment—all of Jamie Hudson's statements in the Examination Under Oath (on behalf of Elliott) are admissions of Elliott, EMC's party opponent." (Filing No. 34 at p. 12).

EMC's brief goes on to argue that its motion "presents the narrow question of whether coverage exists under the Policy for Elliott's 'lost bookings' that would not have been completed during the restoration period" under the plain and ordinary terms of the Policy. (Filing No. 34 at pp. 13-14). EMC argues that, contrary to Elliott's allegation in its counterclaim for over $33 million in "lost bookings," Hudson's testimony reflects Elliott "already had an "extensive backlog" of over 400 bookings at the time of the hailstorm in June 2022," and Elliott was "only completing 300 to 340 units of equipment each year at the time of the hailstorm[.]" (Filing No. 34 at p. 19).

EMC also directs the Court to Hudson's testimony that "Elliott would not be entitled to any income or profit on a 'booking' until the equipment was complete." EMC therefore asserts partial summary judgment on the narrow issue of "lost bookings" is proper because Elliott cannot

2

establish that its alleged "lost bookings," which would not have been completed within the restoration period, are covered under the plain and ordinary meaning of the Policy. (Filing No. 34 at pp. 20-21).

In response to EMC's motion for partial summary judgment, Elliott has filed a Rule 56(d) motion, asserting that EMC's motion "cited 50 statements of material fact, and attached hundreds of pages of exhibits, including both volumes of the EUO and 30 exhibits," and that "[f]undamental fairness dictates that Elliott should be granted adequate time to review and analyze the documents EMC only recently produced, take depositions of EMC's corporate representative, EMC's damage expert (who EMC has not formally identified and has not produced an expert report for), and obtain its own damage expert." (Filing No. 37 at p. 3). Elliott contends that "What constitutes lost bookings in the context of a business income loss claim is not a pure question of law," which is "evidenced by the fact that EMC offered hundreds of pages of evidence in support of its motion[.]" (Filing No. 37 at p. 5). Elliott contends it needs "expert testimony to explain the methodology of how Elliott's damages are calculated, including how lost bookings factor into the damage analysis, and how those damages are a covered loss under the policy." (Filing No. 37 at p. 6). Then, if EMC disagrees with Elliott's methodology, Elliott asserts it will need to depose (1) EMC's corporate representative to challenge EMC's position that lost bookings are not recoverable, and (2) EMC's damage expert, likely Schlader, who has worked hand in glove with EMC during the EUO," and "may provide admissions in his deposition that support Elliott's position." (Filing No. 37 at p. 6).

EMC asserts Elliott's request for discovery is a nonspecific "fishing expedition," and maintains its motion for partial summary judgment is a question of law regarding the time constraints on Elliott's recoverable losses under the Policy. (Filing No. 39 at pp. 7-8). EMC contends its cited exhibits originated with Elliott or Elliott's insurance broker, and that Elliott's counsel had received Hudson's testimony and exhibits in May 2025. EMC asserts its motion addresses Policy language on the relevant time constraints for measuring Elliott's loss, and that discovery on other matters, like expert methodologies, is not necessary for Elliott's defense of EMC's motion as to the plain language of the Policy. (Filing No. 39 at p. 9).

During oral argument on Elliott's motion, counsel also asserted the Policy does not "define lost bookings," and that EMC relies on Hudson's examination under oath for the factual basis. Elliott therefore asserts the Policy provision is ambiguous, which means extrinsic evidence,

including expert testimony, is required to determine what it means. (Filing No. 47 at pp. 5, 9-10, 21).

The heart of EMC's motion for partial summary judgment is that the plain and ordinary terms of the Policy provide that lost bookings or orders are not compensable under the plain language of the Policy if such lost bookings would not have been completed within the restoration period. This is primarily a question of law. However, after review, the Court finds Elliott should be entitled to conduct limited discovery necessary to respond to the factual assertions EMC made in its motion. Such discovery shall be limited and narrowly tailored to addressing the specific factual assertions made in EMC's brief supporting summary judgment—derived primarily from Elliott's CFO's pre-litigation examination under oath. Elliott's assertions that it requires extensive discovery, depositions, and expert disclosures in order to respond to EMC's motion primarily raising an issue of law regarding contract interpretation is not supported by the record before the Court. In the Court's view, this discovery should be limited to one Rule 30(b)(6) deposition and one set of written discovery requests. Because EMC's factual assertions supporting its motion are not extensive, the Court believes 60-days is adequate time for Elliott to complete such limited discovery. Accordingly,

**IT IS ORDERED:**

1. Defendant's Motion to Deny or Defer Ruling on Plaintiff's Motion for Summary Judgment Pending Discovery (Filing No. 36) is granted as follows:
    a. Defendant is granted leave to conduct limited discovery specifically to counter the factual assertions made by EMC in its brief supporting its Motion for Partial Summary Judgment (Filing No. 34).
    b. Such limited discovery shall be complete by **July 14, 2026.**
    c. Defendant's response to Plaintiff's Motion for Partial Summary Judgment (Filing No. 22) is extended to **August 4, 2026.**

Dated this 14th day of May, 2026.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge

4